UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00291-MR

| | |
|---|---|
| DEREK ANTIONE SMITH, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> ERIK A. HOOKS, Secretary, ) <br> N.C. Dept. of Public Safety, ) <br> ) <br> Respondent. ) <br> ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Respondent's Motion for Summary Judgment [Doc. 5] regarding Petitioner's *pro se* Petition for Writ of Habeas Corpus [Doc. 1] pursuant to 28 U.S.C. § 2254.

## I. BACKGROUND

Petitioner Derek Antione Smith is a prisoner of the State of North Carolina. Doc. 6 at 1]. On June 17, 2016, a jury trial was held in the Superior Court of Mecklenburg County, with the Honorable Jesse B. Caldwell presiding. [Id.]. Petitioner represented himself *pro se* at trial with Mr. Dean P. Loven serving as stand-by counsel.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> The woman who was attacked ("C.W.") testified at trial that she returned to her apartment (at times, "the apartment") on the evening of 10 September 2014 to find an unknown man inside. The man, later identified at trial by C.W. as Defendant, had entered the apartment through an unlocked exterior door. He later attacked C.W., tackled her to the ground, and held a knife to her throat. Defendant led C.W. to her bedroom, forced her to undress and get on her bed. The types, degrees, and willingness of the sexual contact that followed were contested at trial. Over the next several hours, Defendant refused to let C.W. leave her apartment, and threatened to kill her if she called for help.
>
> C.W. testified that after Defendant forced her to undress, he undressed himself and forced C.W. to spread her legs. Defendant penetrated C.W.'s vagina with his penis five to six times, but became "frustrated" at being unable to penetrate fully. Defendant allowed C.W. to use the restroom and then forced her to return to the bedroom. Defendant motioned for C.W. to perform oral sex on him, which she did for over an hour. C.W. became frustrated and exhausted. When Defendant was no longer able to maintain an erection, C.W. used that fact as a means to stop, stating that she "was not going to suck a limp d--k." C.W. further testified:
> Q. After you told him that you were not going to suck a limp d--k, what was his reaction to that?
>
> A. He didn't really have one.
>
> Q. Did you also tell him to masturbate himself?
>
> A. I did.

2

Case 3:19-cv-00291-MR   Document 9   Filed 06/30/20   Page 2 of 14

Q. What did he react -- how did he react to that?

A. I think -- the conversation went something like, I told him, you know, you need to do this to yourself and he said, "I don't do that."

Q. He said, he didn't do that?

A. Yeah. He said, "I don't do that." And I said, "Oh, you just break into women's apartments and make them do it for you?"

Q. And what did he say?

A. He said, "Yes, sometimes."

C.W. eventually convinced Defendant to leave her apartment by offering him her laptop, cell phone, and credit cards. When Defendant left the apartment, C.W. called 911 for help. C.W. told the dispatcher that Defendant had left her apartment and had stolen her car, a 2006 white Chevy Cobalt. C.W. then recounted the events of the night, including telling the dispatcher that Defendant "didn't penetrate . . . [b]ut he came close." When asked about that statement at trial, C.W. testified: "I did say I believed [Defendant] had not penetrated," but that "at the time I didn't know all that had occurred." However, later in the same 911 call, C.W. stated:

"Yeah, he put [his penis] and he placed it [in her vagina] with his hand and then did . . . what he . . . yeah" and that Defendant penetrated "three, maybe four" times. Based on C.W.'s description and using a tracking application on C.W.'s stolen cell phone, officers were eventually able to locate her car at a nearby gas station. When they approached the car, Defendant fled. After a brief chase, Defendant was apprehended and placed under arrest. C.W. was

3

>brought to the scene, where she identified Defendant as her assailant.
>
>C.W. testified she immediately went to the hospital to receive medical treatment and was examined by a Sexual Assault Nurse Examiner ("SANE" or "the nurse"). C.W. told the nurse that Defendant had "attempted to insert his penis into my vagina, but I was so tense that he couldn't get it in all of the way. He finally got frustrated and pulled out." At trial, the nurse testified that she identified multiple lacerations to C.W.'s vaginal area and that the results of her examination were consistent with C.W.'s testimony at trial.
>
>The State also called a DNA analyst ("the analyst") with the Charlotte-Mecklenburg Police Crime Lab who tested samples taken from C.W.'s cheek, vagina, and fingernails, and from Defendant's penis and cheek. The analyst determined that the "probability of inclusion or the expected frequency of individuals who could contribute to a portion of the mixture is approximately 1 in 63.2 million." The analyst also found DNA matching Defendant's DNA on vaginal swabs taken from C.W., and calculated that "[t]he probability of selecting an unrelated person at random who could be the source of the major DNA profile [was] approximately 1 in 817 trillion."

State v. Smith, No. COA17-153, 2018 WL 256731, at *1-2 (N.C. Ct. App. Jan. 2, 2018), <u>disc. review denied</u>, 371 N.C. 114, 813 S.E.2d 237 (2018).

The jury convicted Petitioner of (1) felonious fleeing to elude arrest, (2) first-degree kidnapping, (3) common law robbery, (4) first-degree sexual offense by fellatio, (5) first-degree sexual offense by digital penetration, and

(6) first-degree rape.  Petitioner was subsequently sentenced to 988-1,395 months in prison.  [Id.].

Petitioner, represented by Mr. Dylan J.C. Buffum, appealed his convictions to the North Carolina Court of Appeals, arguing the trial court erred by failing to instruct the jury on attempted first-degree rape and by allowing testimony from the victim regarding Petitioner's prior bad acts.  The North Carolina Court of Appeals issued an unpublished opinion finding no plain error on January 2, 2018, and the North Carolina Supreme Court denied Petitioner's subsequent Petition for Discretionary Review.   Id.

On June 25, 2019, Petitioner filed his *pro se* federal habeas petition in this Court.  [Doc. 1].  Respondent filed the instant Motion for Summary Judgment  on November 19, 2019, and the Court issued a Roseboro notice on November 25, 2019 advising Petitioner of his right to respond to the Motion.  [Docs. 5, 7].  Petitioner filed his response  on December 31, 2019.  [Doc. 8].

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c)(2); see also United

States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  Thus, to withstand a motion for summary judgment, the non-moving party must proffer competent evidence sufficient to reveal the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246-47 (1986).

In determining whether a "genuine issue of material fact" exists, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Erwin v. United States, 591 F.3d 313, 327 (4th Cir. 2008).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48.  Rather, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment."  Thompson v. Carlisle, 2010 WL 382044, at *1 (4th Cir. Feb. 3, 2010).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Anderson, 477 U.S. at 248-49.

In addition to the motion for summary judgment standard set forth above, this Court must also consider the petition for writ

6

of habeas corpus under the requirements set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). The habeas statute at 28 U.S.C. § 2254 articulates that a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Absent violation of a Federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief. Wilson v. Corcoran, 562 U.S. 1, 14 (2011) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").

The AEDPA, 28 U.S.C. § 2254(d), limits the federal court's power to grant habeas relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses contained in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may be entitled to habeas corpus relief if the state court adjudication was either contrary to or an unreasonable application of clearly established federal law. This standard is intentionally "difficult to meet." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quote and citation omitted). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.'" Id. (quoting Howes v. Fields, 565 U.S. 499, 505 (2012)) (internal quote and citation omitted) (first alteration in original).

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (plurality opinion). "And an 'unreasonable application of' [clearly established Federal law] must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 572 U.S. at 419 (quoting Lockyer v. Andrade, 538 U.S.

63, 75–76 (2003)). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woodall, 572 U.S. at 419-20 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

### III. DISCUSSION

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a habeas claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). With these principles in mind, the Court turns to Petitioner's grounds for relief.

#### A. Sufficiency of Evidence Claims

In his first ground for relief, Petitioner questions how he was found guilty of rape at trial when the victim's 911 call transcript includes her

9

statement that she and Petitioner did not have sex. [Doc. 1 at 5]. In his second ground for relief, Petitioner's claims "[g]rounds for dismissal of the case, due to lack of Evidence," and that he "was convicted of Lack of evidence." [Id. at 6]. In his third ground for relief, Petitioner states that "[d]espite the womans 911 call story, her story changes often in her detective interview, and at trial." [Doc. 1 at 7]. In his fourth ground for relief, Petitioner questions "[h]ow [he] was arrested, with [the victim's] spare apartment key, no weapon, and a written note from her of her phone, and debit card pin code." [Doc. 1 at 9]. The facts alleged to support this claim include "If I robbed her with a knife, I would have had a knife" and "I had her spare apartment key, because I was going back there." [Id.]. The Court construes all of these claims as essentially claims of insufficient evidence of Petitioner's guilt.

The applicable standard for claims of insufficient evidence on federal habeas review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Wright v. West, 505 U.S. 277, 284 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). Insufficient evidence claims necessarily implicate federal due process considerations. See id. Accordingly, a federal

10

habeas court reviews the sufficiency of the evidence only to the extent necessary to determine if the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law as discussed above. 28 U.S.C. § 2254(d).

Here, however, Petitioner failed to raise these claims of insufficient evidence to the state courts. Absent a showing of cause and prejudice, or a fundamental miscarriage of justice, a habeas petitioner is procedurally barred from obtaining federal habeas review of a claim if he failed to raise and exhaust the claim in the state courts. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). To meet the exhaustion requirement, a petitioner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.1998) (noting that procedural default occurs when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred") (internal quotation marks omitted).

By failing to raise his sufficiency of the evidence claims in the state courts, Petitioner has failed to exhaust these claims, and the court to which he would be required to present the claims in order to meet the exhaustion requirement would now find these claims procedurally barred. See N.C. Gen.Stat. § 15A–1419(a)(3). Petitioner has not demonstrated cause and prejudice or that a fundamental miscarriage of justice would occur if the Court declines to consider the merits of these claims.[1] Consequently, Petitioner's sufficiency of the evidence claims are procedurally defaulted and will be dismissed.

### B. Prior Bad Act Testimony

In his fifth and final ground for relief, Petitioner alleges that the victim "sarcastically lie[d] at my trial" about Petitioner's statement to her "that I often break into women's homes, and force them to have sex." [Doc. 1 at 10]. Petitioner raised this issue on appeal, and indeed the North Carolina Court of Appeals' opinion includes a thorough discussion of the admissibility of prior bad act evidence under North Carolina Rule of Evidence 404(b). See Smith, 2018 WL 256731, at *4-5. On federal habeas review, this Court defers to the state court in its determination of questions of state law. Estelle

---

[1] Even considering the merits of these claims, however, the Court finds them to be without merit, as the evidence of Petitioner's guilt as set forth in the above-recited statement of facts is overwhelming. See Blackledge v. Allison, 431 U.S. 63, 75-76 (1977).

12

v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, Petitioner fails to state a cognizable claim in federal habeas court by attacking the admissibility of evidence under North Carolina's Rule 404(b) as determined by the state trial and appellate courts, and his request for habeas relief in ground five is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Judgment is granted, and the Petitioner for Writ of Habeas Corpus is denied.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). The Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the petition states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 2254.

13

# O R D E R

**IT IS, THEREFORE, ORDERED** that Respondent's Motion for Summary Judgment [Doc. 5] is **GRANTED**, and Petitioner's Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: June 29, 2020

Martin Reidinger
Chief United States District Judge